Filed 11/8/13  P. v. Hansen CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>ELLEN MARIA HANSEN,<br><br>　　　　Defendant and Appellant. | H039654<br>(Santa Clara County<br>Super. Ct. No. C1120888) |

Defendant Ellen Maria Hansen was charged with felony infliction of corporal injury on a spouse or cohabitant (Pen. Code, § 273.5, subd. (a)).[1]  On April 11, 2013, the court, based upon the opinions of two psychologists, determined that defendant was incompetent to stand trial (§ 1370, subd. (a)(1)(B)), suspended criminal proceedings, and ordered defendant committed to a locked psychiatric facility for a term of no more than three years.  Defendant filed a timely appeal.  We will affirm.

FACTUAL BACKGROUND[2]

Defendant and Bobby Duarte have lived together in San José since 2008.[3]  As of November 2011, they lived in a home with Duarte's two uncles.  On the morning of

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

[2] The factual background is derived from the transcript of the preliminary hearing and from the reports of the psychologists submitted to the court below.

[3] It is unclear from the record whether defendant and Duarte are married.  In his testimony at the preliminary hearing, Duarte described defendant and himself as "hav[ing] been together since 2008"; he did not indicate they were married.  In both of

(continued)

November 29, 2011, Duarte received a head laceration after defendant threw an unopened 28-ounce can at him while they were in their bedroom.[4]  The can was among a number of objects, including a footstool, that defendant threw at him.  Defendant was giving Duarte "[a] blank look like she was looking through [him]."  He described her behavior as "erratic."  Duarte left the bedroom, and had his uncle, Daniel, call an ambulance to attend to his injury.  He was taken to Valley Medical Center, where he received eight "staples" to close the laceration.

PROCEDURAL HISTORY

Defendant was charged by information with one felony, i.e., infliction of corporal injury on a spouse or cohabitant (§ 273.5, subd. (a)).

On October 18, 2012, the court expressed a doubt as to defendant's competence to stand trial and suspended criminal proceedings pursuant to section 1368.  The court appointed two psychologists, who examined defendant and submitted reports.

On January 14, 2013, Henry Hoey, Ph.D., a clinical psychologist, interviewed defendant, conducted a mental status examination, and administered several psychological tests.  Dr. Hoey reported that defendant had been diagnosed in the past by two professionals as "suffer[ing] from a Bipolar disorder, which involves seriously impaired cognitions, including strange or paranoid perceptions of others."  In January 2010, defendant was granted a disability retirement from the United States Postal Service due to her psychological condition and her refusal to take psychotropic medications to

the psychologists' reports introduced at trial, defendant and Duarte are described as a married couple.

[4] Duarte testified at the preliminary hearing that defendant threw the can at him as a result of her having a seizure.  He testified that "[s]he had no idea where she was or anything" and it occurred "because of the attack that occurred on her in 2008."  San José Police Officer Fred Mills, who responded to the scene, testified that Duarte told him at the time that he and defendant had been arguing "over financial matters, namely that they were unemployed, and they were out of money, and she had thrown a large can of crushed tomatoes at him . . ."

2

address these issues. Defendant reported to Dr. Hoey that in February 2008, she had been severely beaten with a baseball bat by her neighbor and had suffered scalp lacerations and a fractured jaw. She was described by others witnessing the incident as having been severely traumatized. She indicated that she often dreamt about the attack, and lived in "fear of being beaten up again and that she somehow draws people to attack her." In addition, she "describe[d] herself as having hallucinations when she becomes aroused from her sleep."

Dr. Hoey in his report recited the nature of the subject incident of November 29, 2011, based upon his review of the police report. The police indicated that they perceived defendant as having exhibited "bizarre behavior" that continued while she was transported to jail. The police also reported that she had " 'rapid and nervous speech[,]' agitation[,] and [voiced] 'nonsensical/random sentences,' " which behavior was also observed by Dr. Hoey during the interview. Defendant was unable to respond to questions about the incident; she became upset and "her thinking deteriorate[d]."

Psychological testing conducted by Dr. Hoey indicated that defendant's "cognitive functioning [was] significantly impaired." Dr. Hoey opined that defendant was "suffering from a Bipolar-I disorder, with rapidly cycling moderate to severe proportions with psychotic features, 296.04 DSMIV-TR . . . her Bipolar disorder has psychotic features due to her paranoid thinking and delusions." He concluded that she "is not sufficiently competent to stand trial at this time. Moreover, this lack of competence is a result of her Bipolar disorder. Although she generally understands the criminal proceedings that she is facing[,] she is clearly unable to assist her attorney in the conduct of her defense in a reasonable and rational manner." (Original emphasis omitted.)

On October 29, 2012, D. Ashley Cohen, Ph.D., a clinical psychologist, conducted an interview of defendant to determine her mental status and trial competency. Dr. Cohen indicated that defendant's "speech was rapid, and highly pressured much of the time. She evidence[d] mild dysarthria, of the type commonly seen in persons who have

3

sustained a brain injury. The content of her speech was only intermittently coherent and logical. She jumped between topics to such an extent that she frequently became confused as to the point she was attempting to make." Defendant reported that she had been having psychological problems dating back to her childhood. She also reported that she had been "diagnosed in the past with Bipolar Disorder, Major Depressive Disorder, PTSD, and Agoraphobia."

Dr. Cohen opined that defendant exhibited "strong indications of currently experiencing a serious psychiatric disorder, characterized by poorly controlled mood, delusional thinking, and behavioral abnormalities. She is also showing negative effects from a recent past serious head injury, and those are physical, cognitive, and psychiatric." Dr. Cohen concluded that defendant was "incapable of assisting counsel in pursuing a defense in a rational manner" and was thus not competent to stand trial.

On March 13, 2013, a court trial was conducted on the question of defendant's competence to stand trial.[5] The parties submitted the case on the basis of the reports of the two psychologists. Based upon the reports of Dr. Cohen and Dr. Hoey, the court found defendant not competent to stand trial. The record reflected that defendant personally objected to this finding.

On May 8, 2013, the court issued an order committing defendant to the State Department of Mental Health for placement in a locked psychiatric facility under section 1370, subdivision (a)(2), with a maximum term of three years. Defendant filed a timely notice of appeal from the commitment order, which is appealable under Code of Civil Procedure section 904.1, subdivision (a)(1). (*People v. Fields* (1965) 62 Cal.2d 538, 542.)

---

[5] Defendant waived a trial by jury.

4

## DISCUSSION

We appointed counsel to represent defendant in this court. Appointed counsel filed an opening brief which stated the case and the facts but raised no specific issues. We notified defendant of her right to submit written argument on her own behalf within 30 days. Defendant filed a one-paragraph letter reflecting her argument in the matter. Her position is that the psychologists "submit[ted] falsified reports to the court containing easily proven outright lies . . . This should be grounds enough to doubt the veracity of any further statements [in] their reports. So, I humbly request an overturning of the ruling on this matter." Defendant further stated in her letter that she had "never been incompetent in anything, including assisting my Public Defenders or my Appellate attorney with my defense." Her letter raises no other challenges to the commitment order.

We have reviewed the entire record pursuant to *People v. Wende* (1979) 25 Cal.3d 436. Based upon that review, we have concluded that there is no arguable issue on appeal.

## DISPOSITION

The order of commitment is affirmed.

_____

Márquez, J.

WE CONCUR:

_____

Rushing, P.J.

_____

Premo, J.

6